### STATE *EX RELATIONE* ROBBS v. TALLEY.

Petitioner, a resident of this State, with a diploma from a chartered medical college outside of the State, registered with the clerk of court in the proper county, and then applied to the State board of medical examiners under the act of 1887 (19 *Stat.*, 820), who refused to license him to practise medicine. He then made application to this court for a writ of *mandamus* requiring said board to grant him a license. *Held*, that the phrase "coming into this State" in the statute did not apply to a citizen returning home from another State with a diploma, but only to non-residents; that petitioner, by his diploma and his registry, was entitled to practise his profession, and that the State medical board was without authority to grant or refuse license in such cases. *Mandamus* therefore refused.

MR. CHIEF JUSTICE SIMPSON *dissented* as to the power and duty of the board.

This was an original application to this court on behalf of Dr. J. R. Robbs for a writ of *mandamus* to be directed to Dr. A. N.

Talley and others, members of the State board of medical examiners. The opinion fully states the case.

*Mr. S. P. Hamilton,* for relator.

*Mr. Earle,* attorney general, contra.

June 16, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This was a suggestion in *mandamus* heard in the original jurisdiction of this court upon the following statement of facts, to wit:

"J. R. Robbs, the relator, was born in what is now known as White Plains township, Spartanburg County, in the State of South Carolina, and lived there continuously until he arrived at full age. In 1882 he commenced the study of the medical profession with Dr. Miles Walker, a practising physician of the adjoining County of Union, with whom he studied thirteen months. In the fall of 1882 he went to Richmond, Va., and took a full course of lectures at the medical·college of that place. In the fall of 1883 he commenced and finished a full course of lectures at the Louisville Medical College, of Louisville, Kentucky, a duly chartered and incorporated college under the laws of said State; was graduated at that institution and received a genuine diploma therefrom on February 26, 1884. In that year he commenced the practice of his profession on Broad River, Chester County, S. C. In January, 1888, he removed to the town of Chester, and on the fifth of that month he was registered by the clerk of the court for Chester County in a book kept for that purpose, styled the registry of physicians and surgeons; but it is admitted that said diploma was never exhibited to the faculty of any medical college or medical board of this State, and that no endorsement was made thereon by the same before he was registered by the clerk.

"That on March 28, 1888, Dr. A. N. Talley, chairman, Dr. T. Grange Simons, Dr. C. R. Taber, Dr. S. M. Orr, and Dr. J. C. Wilcox, secretary and treasurer, were the State board of medical examiners, appointed and organized according to law. That on said day Dr. J. R. Robbs, the relator, presented his said

diploma to the said State board of medical examiners, and asked that they should issue to him a license to practise physic and surgery in the County of Chester, according to law. That said board denied his request and required him to stand an examination before said board, and after such examination, lasting only a short time, refused to grant him a license. That before such examination the said board received from him the sum of thirty dollars, claiming it as a fee allowed by law. That said J. R. Robbs allowed himself to be examined, and paid this fee in entire ignorance of his rights in the premises, and the said money now remains in the possession of said board."

The question involved turns upon the construction which should be given to the acts of assembly of this State enacted for the purpose of regulating the practice of medicine in said State. The acts upon this subject are, 1st, the act of 1817 (6 *Stat.*, 64); 2nd, the act of 1828 (6 *Stat.*, 367); 3rd, act of 1833 (6 *Stat.*, 497); 4th, act of 1869 (14 *Stat.*, 197, incorporated in General Statutes of 1872, page 227); 5th, act of 1881 (17 *Stat.*, 571; *Gen. Stat.*, § 919); and 6th, the amendment to this last act in 1887.

The first act, to wit, of 1817, entitled an "act to regulate the licensing of physicians to practise," &c., &c., provided in section 1, that from and after the passage of said act no person should be allowed to practise physic or surgery, &c., unless he shall have first been licensed to do so, in the manner thereinafter prescribed; and in the 5th section it prescribed the manner, to wit, that there should be established two boards of physicians, one at Charleston and the other at Columbia, who, at their annual meetings, were authorized to examine all applicants and to license such as they found competent, &c., provided, however, that if any applicant shall have studied and received a diploma from any medical college, he should be licensed without an examination, &c. The act of 1828, which was an amendment to the act of 1817, provided that the medical boards created under the act of 1817 should not grant a license to any applicant, unless he had obtained a diploma from some "medical institution." or should pass an examination by the faculty of the medical college of Charleston; repealing in terms so much of the act of 1817

as was repugnant to said amendment. The act of 1833 invested the trustees and faculty of the medical college of the State of South Carolina with the power to grant licenses to practise medicine and surgery, &c., to any person who, upon applying for the same, should present a diploma from some medical institution, or who, upon examination by the said faculty, should be recommended as qualified.

The act of 1869, entitled an "act to regulate the practice of medicine in this State," provided that it was unlawful for any person within the limits of this State who has not attended two full courses of instruction and graduated at some school of medicine, either in the United States or some foreign country, or who cannot produce a certificate of qualification from some State medical society, &c., to practise medicine, &c., for reward or compensation, provided, that where any person has been continuously engaged in said practice for a period of ten years or more, &c., he should be regarded as having complied with said act. And this act in section 2 further provided that any person living in the State, or coming into the State, who shall practise medicine, &c., in violation of section 1 thereof, should, upon conviction, be fined and imprisoned as specified in the act. This act repealed all acts or parts of acts inconsistent therewith.

The act of 1881, which is entitled an "act to regulate the licensing of physicians and surgeons," provided, first, that no person should practise physic or surgery, unless he was twenty-one years of age, and either had been authorized to do so pursuant to the laws in force at the time of his authorization, or is hereafter authorized to do so by the subsequent sections of said act. It then goes on to enact, in substance, that every physician then lawfully engaged in the practice within the State should register his name, residence, place of birth, with his authority to practise, &c., in the clerk's office of the county by the first day of June, 1882, and that every person subsequently authorized to practise, before commencing to practise, should also register as above. It then enacts in section 4 that a *person coming into the State* may be licensed to practise physic or surgery, if he has a diploma, &c., issued by an incorporated university, medical college, or medical school, without the State, and which, upon exhibi-

tion thereof to the faculty of some incorporated medical college or the medical board of the State, &c., shall be approved, said approval being endorsed thereon, and when so endorsed shall operate as a license upon the applicant complying with section 2 of the act, *supra*, as to registering in the clerk's office. It further enacts in section 5 that the medical board referred to in the previous section should be composed of the physicians and surgeons constituting the local board of health in various counties of the State, &c. In section 6 it is further enacted that the degree of doctor of medicine, lawfully conferred by any medical college or university in this State, shall be a license to practise physic or surgery within the State, after the person to whom it may be granted shall have complied with section 2 as to registering. And this act repeals all acts inconsistent therewith.

The act of 1887 (19 *Stat.*, 820) amends the act of 1881, above, in several particulars: First. It adds to section 2 thereof the following words: "Said clerk shall not allow *any one* to register without a license from the State board of examiners." It strikes out of section 4 so much thereof as required the applicant to exhibit his diploma to the faculty of some incorporated medical college, or the medical board of the State, and enacts that said exhibit shall be first made to the chairman of the State board of medical examiners, who, upon conference with the board, by letter or personally, may issue a license to register in the proper county, or should the board decline to grant such license upon an inspection of the applicant's diploma, then he shall be summoned before the said board, there to be examined, &c., the license to be granted, or not, as the board may determine, the applicant to pay $5 for examination of diploma, or $30 for personal examination, &c. And subdivision 5 of said section in reference to the local boards mentioned above is stricken out, and instead thereof a State board of medical examiners, the one referred to above, is provided for. This act was approved December 23, 1887.

A brief analysis of these different acts shows that from 1817 to 1828 physicians and surgeons could be licensed in this State by one of the two boards mentioned in the act of 1817, either upon examination where the applicant had no diploma, or without said examination where he had a diploma. From 1828 to

38

1833 a diploma was required, or an examination by the faculty of the medical college of Charleston. From 1833 to 1869 the trustees and faculty of the medical college of the State could alone grant license, which it was authorized to do, upon the presentation of a diploma from some medical institution, or, in its absence, upon examination by, and a recommendation from, said faculty. From 1869 to 1881 two full courses of instruction and graduation at some school of medicine, either in the United States or some foreign country, or a certificate from some State medical society, were required, and it seems that it was lawful for any person thus equipped to practise without further authority from any source, and this act repealed all acts inconsistent therewith. From 1881 to 1887 all physicians and surgeons were required to register in the clerk's office, &c., as mentioned above, those then lawfully practising to register by June 1, 1882, and those subsequently authorized to practise to register before they commenced to practise.

This act, however, made no express change as to the mode of authorization found in the act of 1869, incorporated in General Statutes of 1872, except it affirmatively enacted that the degree of doctor of medicine lawfully conferred by any medical college or university in this State should be a license, after the registry in the clerk's office therein provided, and except also as to the class of persons *coming into the State.* As to such persons it made entirely new regulations, and up to the act of 1887 these last mentioned persons, to wit, those *coming into the State,* were required to submit their diploma, if obtained from an institution without the State, either to the faculty of some incorporated medical college, or to certain local boards of health in the various counties of the State, to be endorsed by them, which endorsement should operate as a license, when the registry in the clerk's office was completed. Thus stood the law until the act of 1887, which altered the act of 1881, so as to give jurisdiction over those *coming into the State* to a new board created by said act, to wit, the board known as the "State board of medical examiners," and investing such board with the power to examine such persons if deemed necessary, &c., license to be granted or not, as the said board might determine. This act also provided that no

registry by any person could be made in the clerk's office until license was obtained from this board.

Now, our conclusion is, that the State board of medical examiners, in so far as the *examination* of an applicant for license is concerned, has no jurisdiction over any class, except those "*coming into the State,*" and we understand those terms to mean persons non-resident coming into the State. This seems to us to be the plain, legitimate, and ordinary signification of the words used, which is the first and most important rule applicable to the construction and interpretation of written instruments. Besides, in the act of 1869 a distinction is drawn between non-residents and residents on this subject, where this language is used: "That persons *living in the State,* or coming into the State," &c., recognizing the two classes. So that it seems clear to us that in so far as the *examination* provided for in the amendment to the act of 1881 by the act of 1887 by the State board of examiners is involved, the jurisdiction of said board is confined to persons *coming into the State* with the view to engage in the practice of physic or surgery, relying on a diploma obtained without the State; and that as to residents, the act of 1869, which requires two full courses of instruction and graduation at some school of medicine, either in the United States or some foreign government, &c., applies, with the right to any one, whether non-resident or not, under section 6 of the act of 1881, obtaining a degree of doctor of medicine, lawfully conferred by a medical college or university in this State, to a license, said degree in itself constituting said license.

The act of 1881 provided, however, that all should register in the clerk's office of the county where the party intended to engage in the practice; and this applied to those then in the practice, to those subsequently entering the practice, to residents, and those coming into the State, with this difference, that those coming into the State, before they could register, were required to have their diplomas approved and endorsed by some local boards of health of the State, as provided in sections 4 and 5 of said act, while those already in the State could register without this endorsement upon affidavit, &c., as required by section 2 of said act. Under the amendment of 1887 to this portion of the

act of 1881, however, all have been placed in the same position as to the right of registration, by declaring that the clerk shall not allow *any one* to register without a license from the State board of examiners.

Now, it appears in the statement of facts that the relator is a native and resident of this State; that, being such resident, he is not subject to the jurisdiction of the State medical board, in so far as to be subjected to an examination by that board; that his diploma, obtained in 1884 from the Louisville Medical College of Louisville, Kentucky, admitted to be a duly chartered and incorporated college under the laws of that State, entitles him to pursue his profession under the act of 1869, provided he is a person of good moral character, and provided that he registers in the clerk's office as required. Before the amendment of 1887 he could have registered under the law as it stood from 1881 to 1887 by making the necessary affidavit, having obtained his diploma in 1884. He, however, did not register until 1888, which was after the amendment of 1887, providing that no registry should be allowed by the clerk without a license from the State board of examiners.

There is nothing in the amendment of 1887 to the act of 1881 which, in express terms, gives power to the State board of medical examiners to grant a license to one living in the State, a resident (the jurisdiction of that board being confined to those *coming into the State*, as we have seen above), in so far as direct and affirmative expressions are used on the subject of authorization to practise. But as to residents and those living in the State, the general authority to practise comes from the possession of a diploma, as mentioned above, and registry in the clerk's office, under a proper construction of the act of 1869 and 1887. But yet the clerk is forbidden to allow any one to register without a license from the said State board of examiners, and while, as we have said, there is no express authority in said board to grant license to those living in the State, yet as such persons, although otherwise qualified, cannot lawfully practise without such registry, and cannot register without said license, the implication seems necessary and authoritative that said board has the power to grant the license to such persons, and not only the power, but

it is the duty of said board to do so, upon the production of a diploma from any school of medicine, either in the United States or any foreign country, the applicant having attended at least two full courses of instruction, and having graduated as prescribed in the act of 1869. Unless this be so, such persons could in no way be allowed to enter upon their profession.

The relator belongs to this class. He is a native and a resident of the State. It is admitted that he holds a diploma from a regularly incorporated medical institution of another State, that he has attended two full courses of instruction, and that he has graduated. No question is raised as to his moral character, and we think he is entitled to a license so as to enable him to register, and under the facts of the case as agreed upon it is the ministerial duty of the State board of examiners, the respondents, to grant such license for that purpose. And to this end, I think, the writ should be ordered.

MR. JUSTICE McIVER. This case involves the right of the relator to practise physic and surgery within the limits of this State, and must be determined by the statutes regulating that subject. Inasmuch as the acts of 1817, 1828, and 1833, together with the act of February 26, 1869, have been expressly repealed by the General Statutes of 1872 (pages 816, 823, 826, and 846), we need look no further than to such provisions of the act of 1869, as were incorporated in the General Statutes of 1872, page 227, and such statutes as have been subsequently passed relative to the subject under consideration.

By section 1, of chap. XXXII., of the General Statutes of 1872, it was declared "that it shall be unlawful for any person within the limits of this State, who has not attended two full courses of instruction, and graduated at some school of medicine, either in the United States or some foreign country, or who cannot produce a certificate of qualification from some State medical society, and is not a person of good moral character, to practise medicine   *   *   *   for reward or compensation," &c:, with a proviso that any person who can produce a certificate from some physician of good standing or from three citizens, one of whom shall be a person qualified to administer an oath, that he has been

continuously engaged in the practice of medicine for a period of ten years or more, "shall be considered to have complied with the provisions of this chapter." By the act of 1878 (16 *Stat.*, 598), this proviso was stricken out, so that as the law then stood and continued to stand, until the act of 1881, hereinafter referred to, was passed, all that was requisite to enable one to practise medicine in this State was that he should be a person of good moral character, should have "attended two full courses of instruction, and graduated at some school of medicine, either in the United States or some foreign country," or that he should be able to "produce a certificate of qualification from some State medical society." There was no provision in this act, as incorporated in the General Statutes of 1872, imposing any penalty for a violation of its provisions, as there was in the original act from which it was taken, but the second section of the chapter simply provided that a person violating the provisions of the first section should not be entitled to receive any compensation for services rendered.

The next legislation upon the subject was the act of 1881, 17 *Stat.*, 571. The first section makes it unlawful for any person to practise physic or surgery, for compensation, within this State "unless he is twenty-one years of age, and either has been heretofore authorized so to do, pursuant to the laws in force at the time of his authorization, or is hereafter authorized to do so by the subsequent sections of this act." The second section provides that: "Every person now lawfully engaged in the practice of physic and surgery within the State, shall, on or before the first day of June, 1882, and every person hereafter duly authorized to practise physic and surgery, shall, before commencing to practise, register in the clerk's office," &c. The third section prescribes the penalty for a violation of either of the two preceding sections. The 4th section provides that: "A person coming to the State may be licensed   *   *   *   in the following manner: if he has a diploma conferring upon him the degree of doctor of medicine, issued by an incorporated university, medical college, or medical school, without the State, he shall exhibit the same to the faculty of some incorporated medical college, or the medical board of the State, with satisfactory evidence of his good

moral character, and such other evidence, if any, of his qualifications as a physician and surgeon, as said medical college or medical board may require. If his diploma and qualifications are approved by them, they shall endorse said diploma," and when so endorsed it shall authorize the applicant to practise physic and surgery, after complying with the provisions of the 2nd section of the act, by registering in the clerk's office. The section also prescribes the fee to be paid by the applicant for such examination and endorsement. The 5th section declares who shall constitute the medical board referred to in the preceding section, and provides for the disposition of the fees paid by applicants. The 6th section declares that the degree of doctor of medicine, lawfully conferred by any medical college or university in this State, shall be a sufficient license, after the person to whom it has been granted shall have registered in the clerk's office, as required by the 2nd section of the act. This act makes no specific allusion either to the act of 1869, as it was originally passed, or as it was incorporated in the General Statutes of 1872, but the last section declares that "all acts or parts of acts inconsistent with this act are hereby repealed."

The foregoing provisions of the act of 1881 were incorporated in the General Statutes of 1882, as section 919, which was divided into subdivisions corresponding with the sections of the original act. At the extra session of the general assembly in July, 1882 (17 *Stat.*, 1173), the second section of the act of 1881 was amended; but as the amendment cannot affect the question under consideration, it need not be further noticed. By the act of December, 1882 (18 *Stat.*, 144), section 919 of the General Statutes of 1882, was amended by striking out the provisions requiring the applicant to pay a fee of twenty dollars for examination and endorsement of his diploma. The last legislation upon the subject will be found in the act of 1887 (19 *Stat.*, 820), whereby several important amendments are made to section 919 of the General Statutes. This act was approved December 24, 1887, and inasmuch as the relator registered in the clerk's office on January 5, 1888, before the expiration of twenty days from the approval of the act by the governor, a question might be raised as to whether the act of 1887 can be applied to this case.

But as that is a serious question and was not argued at the bar, and as, under the view I take of the case, it is not material, I do not propose to consider it now, or to intimate any opinion either one way or the other as to that question, but shall assume, for the purposes of this case *only*, that it does apply.

The first amendment made by that act is by the addition of the following words to subdivision 2, of section 919, to wit: "Said clerk shall not allow any one to register without a license from the State board of medical examiners," and then the subdivision is reënacted in the same words as those used in the original act (ignoring entirely the amendment of July, 1882), with the addition of the words above quoted. The next amendment is to subdivision 4, whereby "a person *coming to the State,*" with a diploma conferring upon him the degree of doctor of medicine, issued by some medical college or university outside of the State, and desiring to obtain a license to practise here, is required, instead of exhibiting his diploma to the persons designated in the subdivision as originally enacted and obtaining their endorsement, which he could do without the payment of any fee, to exhibit the same "to the chairman of the State board of medical examiners, who, after conferring with the board either by letter or personally, shall, if a majority of the board be favorable, issue to such applicant a license to register in the county in which he intends practising either medicine or surgery. Should the board decline to grant such license, upon inspection of the applicant's diploma, said applicant shall be summoned to appear before said board at their next meeting, and there be examined by said board in all the branches of physic and surgery, as they may determine. Should such examination be satisfactory to said board, they shall issue a license to him or her to register as above provided. The applicant shall pay to said board five dollars for examination of diploma, or thirty dollars for personal examination, at the time he or she makes application for such examination." By the next amendment subdivision 5 is stricken out, and in lieu thereof another is inserted, declaring who shall constitute the State board of medical examiners, referred to in the previous subdivisions, what shall be their term of office, their time of meeting, and providing for their compensation out of the

fees received from the applicants for license, and that any balance thereof shall be turned over to the State board of health.

It will be observed that the act of 1887 leaves untouched the 6th subdivision of section 919 of the General Statutes, whereby it is declared that the degree of doctor of medicine conferred by any medical college or university in this State shall be a license to practise physic and surgery within the State, after the person to whom it has been granted shall have complied with subdivision 2 of the section, by registering in the clerk's office, and there is no general repealing clause in the act.   It will also be observed that the act of 1881 only repeals such acts or parts of acts as are inconsistent with its provisions, and as I am unable to perceive any inconsistency between the provisions of the act of 1881 and so much of the act of 1869 as was incorporated in the General Statutes of 1872, it seems to me that such act must be regarded as still of force.

This being so, then it would seem, from this review of the legislation of the State, that three classes of persons who may be licensed to practise medicine in this State are contemplated: 1st. Citizens or residents of this State.    2nd. Graduates of any medical college or university in this State, whether citizens or residents of this or any other State.    3rd. Persons "coming to the State," with a diploma conferring the degree of doctor of medicine "issued by an incorporated university, medical college, or medical school without the State;" and that while all of these several classes are required to register in the clerk's office as a pre-requisite to their right to practise medicine in this State, the other requirements necessary to obtain a license so to practise seem to be different in each of the other classes.    For example, a person belonging to the first class, that is one who is a citizen of this State, but has no degree of doctor of medicine conferred by some medical college or university in this State, can only obtain his license by complying with the requirements of section 1 of chapter XXXII., of the General Statutes of 1872, which for convenience will be designated as the act of 1869, for I am unable to find any other statute applying to persons of that class, as the act of 1881, as amended by the act of 1887, by its express terms, applies only to persons falling within the 2nd and 3rd classes

above stated, except as to the requirement of registry in the clerk's office, which, as I have said, applies to *all* persons desiring to enter upon the practice of medicine in this State.

A person belonging to the 2nd class, that is one who, whether a citizen of this State or not, can obtain his license by a compliance with the provisions of subdivision 6 of section 919, which, as we have seen, is left unaltered by the amendatory act of 1887. A person belonging to the 3rd class can only obtain a license by complying with the provisions of subdivision 4 of section 919 of the General Statutes as amended by the act of 1887.

The practical inquiry in this case, therefore, is, to which of these three classes does the relator belong? It is quite certain that he does not belong to the 2nd class, and I think it equally certain that he cannot be placed in the 3rd class, and he must, therefore, fall into the first class. I agree with the Chief Justice that the words used in the act: "A person coming to the State," must be given their natural and ordinary signification, as I see nothing in the act which would require or even warrant a court in giving them any other signification. On the contrary, when we see, as shown in the opinion of the Chief Justice, that the legislature in previous legislation upon this subject has plainly distinguished between residents and non-residents, and when we see by the express terms of the act under consideration a plain distinction is made between graduates of one of our own institutions and graduates of institutions without the State, it seems to me that to give the words under consideration any other than their plain meaning would be straining the power of construction to such a point as would at least approach, if it did not invade, the domain of legislation. Nor do I think that the construction placed upon these words may have the effect of bringing this provision of the act into conflict with the provisions of the constitution of the United States affords any warrant for deflecting the words in question from their plain meaning.

It seems to me clear, therefore, that the relator, who is admitted to be a native of this State and lived here always, except when absent pursuing his studies in another State, cannot, with any sort of propriety, be regarded as "a person coming to the State," and hence he was under no obligation to apply to the

State board of medical examiners for a license to practise medicine, as that board has no jurisdiction whatsoever over that class of persons to which the relator belongs, their authority being confined entirely to persons "coming to the State," and desiring to practise under a diploma, conferring the degree of doctor of medicine, issued by some medical institution without the State. It seems to me, therefore, that the relator, having registered in the clerk's office, was entitled to enter upon the practice of his profession, and needed no license from the State board of medical examiners, and for this reason I think his application for a writ of *mandamus* should be refused.

It is true that the language added to the 2nd subdivision of section 919 of the General Statutes by the amendatory act of 1887, whereby the clerk of the court is prohibited from allowing any person to register without a license from the State board of medical examiners, is broad enough to cover all classes of persons; but it seems to me that this language must be so construed as to conform to the other provisions of the act, and inasmuch as that board has not been invested with authority to license any but a particular class of persons, the language in question must be confined to that class.   The State board of medical examiners, when applied to for a license by a person not belonging to the class whose claims alone they have been invested with jurisdiction to pass upon, might well decline, for lack of authority, to issue such license; and if the act should be so construed as to prohibit the clerk from allowing such a person to register, the result would be that none but persons belonging to the 3rd class could lawfully enter upon the practice of medicine in this State; and this surely the legislature never intended.   On the contrary, it is expressly declared in subdivision 6 of section 919 of the General Statutes that "the degree of doctor of medicine lawfully conferred by any medical college or university in this State, *shall* be a license to practise," &c., after the person to whom it has been granted shall have registered in the clerk's office.   If, therefore, a person holding such a degree, which is expressly declared to be a license, cannot register without obtaining another license, for which a fee is required to be paid, from the State board of medical examiners, which license that board has not been authorized to issue to such

a person, then there is a manifest conflict between the two subdivisions of the section. To avoid such conflict it seems to me necessary that the two apparently conflicting provisions must be construed together, and that the language of the amendment to subdivision 2 must be read as applying only to those who by the amendment to subdivision 4 are required to obtain a license from the State board of medical examiners, and cannot be read as applying to such persons as are not required to obtain a license from that board.

. For these reasons I am unable to concur in the conclusion reached by the Chief Justice.

MR. JUSTICE McGOWAN. I concur in this opinion of Judge McIver. We all agree that the authority of "The State board of medical examiners," to examine applicants, and to grant or refuse licenses to practise medicine, is limited to those "*coming to the State,*" and that by proper construction that phrase does not embrace those who are native citizens, and have always been residents of the State. Having reached this conclusion. it would seem to follow necessarily, that the legislature could not have intended, that a citizen of the State, with his diploma to practise medicine from a regularly incorporated medical college, should be required to obtain a second license from the board of examiners, for no other purpose than to enable him to make the proper registry in the clerk's office.

PER CURIAM. The judgment of the court is, that the *mandamus* prayed for, be refused on the ground that the State board of medical examiners has no jurisdiction of the case of the relator who, being a resident of the State, and having registered in the clerk's office, needs no license from the board of examiners to enable him to practise his profession.

Let the petition be dismissed.